# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| BITNOMIAL EXCHANGE, LLC, <br><br>      *Plaintiff,* <br><br>   v. <br><br> U.S. SECURITIES AND EXCHANGE COMMISSION, GARY GENSLER, CAROLINE A. CRENSHAW, JAIME E. LIZÁRRAGA, HESTER M. PEIRCE, and MARK T. UYEDA, <br><br>      *Defendants.* | No. 1:24-cv-09904 |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6), OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARDS ...................................................................................................... 4

ARGUMENT .................................................................................................................... 5

I.    This Court lacks subject-matter jurisdiction because the complaint does not present a
      justiciable case or controversy. ............................................................................... 5

      A.    Bitnomial's claims are not ripe. ...................................................................... 5

            1.    Judicial intervention would be unduly disruptive. ................................... 6

            2.    The Court would benefit from further factual development of the
                  issues. ..................................................................................................... 8

            3.    There is no cognizable hardship to Bitnomial from withholding judicial
                  review now. ............................................................................................. 9

      B.    Bitnomial lacks Article III standing. ............................................................... 11

II.   The complaint fails to state a claim upon which relief can be granted. .......................... 13

      A.    The complaint fails to identify a viable a cause of action. .................................. 13

            1.    Bitnomial identifies no source of authority providing a cause of
                  action. ..................................................................................................... 13

            2.    The APA would not provide a cause of action here. ................................. 15

      B.    The complaint fails to allege facts demonstrating that the XRP futures
            Bitnomial allegedly seeks to list cannot be security futures. ............................. 18

III.  The Court should exercise its discretion to dismiss this lawsuit. ................................... 22

IV.   In the alternative, the Court should stay these proceedings pending resolution of the
      Second Circuit *Ripple* appeal. ................................................................................ 24

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Abbott Lab'ys v. Gardner,*
387 U.S. 136 (1967) ............................................................................ 5, 6, 9

*Abbs v. Sullivan,*
963 F.2d 918 (7th Cir. 1992) ............................................................... 17, 18

*Aetna Life Ins. Co. v. Haworth,*
300 U.S. 227 (1937) ................................................................................ 14

*Agri-Trans Corp. v. Gladders Barge Line, Inc.,*
721 F.2d 1005 (5th Cir. 1983) ................................................................ 23

*Alarm Detection Sys. v. Orland Fire Prot. Dist.,*
929 F.3d 865 (7th Cir. 2019) .................................................................. 14

*Am. Fed'n of Gov't Emps., AFL-CIO v. O'Connor,*
747 F.2d 748 (D.C. Cir. 1984) ................................................................. 8

*Amling v. Harrow Indus. L.L.C.,*
943 F.3d 373 (7th Cir. 2019) .................................................................. 22

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015) .......................................................................... 14, 15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................ 5, 21

*AT&T Corp. v. FCC,*
349 F.3d 692 (D.C. Cir. 2003) ................................................................ 10

*AT&T Co. v. EEOC,*
270 F.3d 973 (D.C. Cir. 2001) ........................................................... 16, 18

*Audet v. Fraser,*
605 F. Supp. 3d 372 (D. Conn. 2022) ...................................................... 19

*Bd. of Trade of City of Chicago v. CFTC,*
704 F.2d 929 (7th Cir. 1983) .............................................................. 7, 8, 9

*Bd. of Trade of City of Chicago v. SEC,*
187 F.3d 713 (7th Cir. 1999) .................................................................... 3

*Bd. of Trade of City of Chicago v. SEC,*
883 F.2d 525 (7th Cir. 1989) ......................................................... 6, 13, 14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................... 5, 22

*Bennett v. Spear*,
520 U.S. 154 (1997) ............................................................... 15, 16, 17

*Bethlehem Steel Corp. v. EPA*,
536 F.2d 156 (7th Cir. 1976) ........................................................ 10

*California v. Texas*,
593 U.S. 659 (2021) ..................................................................... 11

*Ciba-Geigy Corp. v. EPA*,
801 F.2d 430 (D.C. Cir. 1986) ........................................................ 7

*Citizens for Appropriate Rural Rds. v. Foxx*,
815 F.3d 1068 (7th Cir. 2016) ........................................................ 8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ...................................................................... 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................................................. 11, 12, 13

*Clinton v. Jones*,
520 U.S. 681 (1997) ..................................................................... 24

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ............................................................... 15, 17

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ...................................................................... 5

*Dawoudi v. Nationstar Mortg., L.L.C.*,
2016 WL 8711604 (N.D. Ill. Sept. 16, 2016) ....................................... 25

*Dhakal v. Sessions*,
895 F.3d 532 (7th Cir. 2018) ........................................................ 15

*Emerson v. Dart*,
109 F.4th 936 (7th Cir. 2024) ......................................................... 4

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ..................................................................... 11

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ..................................................................... 15

*FTC v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) ..................................................................... 17

*Google, Inc. v. Hood*,
822 F.3d 212 (5th Cir. 2016) ........................................................... 9

*Hodl Law, PLLC v. SEC*,
 2024 WL 3898607 (9th Cir. Aug. 22, 2024) ........................................ 12

*Home Builders Ass'n v. U.S. Army Corps of Eng'rs*,
 335 F.3d 607 (7th Cir. 2003) ........................................ 8, 16

*Indiana Right to Life, Inc. v. Shepard*,
 507 F.3d 545 (7th Cir. 2007) ........................................ 5

*KalshiEX LLC v. CFTC*,
 119 F.4th 58 (D.C. Cir. 2024) ........................................ 3

*McCauley v. City of Chicago*,
 671 F.3d 611 (7th Cir. 2011) ........................................ 3, 20

*McCready v. White*,
 417 F.3d 700 (7th Cir. 2005) ........................................ 13

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007) ........................................ 11, 22, 23

*Murthy v. Missouri*,
 603 U.S. 43 (2024) ........................................ 13

*Nat'l Ctr. for Pub. Pol'y Rsch. v. SEC*,
 2024 WL 4784358 (5th Cir. Nov. 14, 2024) ........................................ 2, 3, 6, 12, 16

*Nat'l Health Fed'n v. Weinberger*,
 518 F.2d 711 (7th Cir. 1975) ........................................ 24

*Nat'l Park Hosp. Ass'n v. DOI*,
 538 U.S. 803 (2003) ........................................ 6, 8, 10

*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*,
 28 F.3d 572 (7th Cir. 1994) ........................................ 23

*Ohio Forestry Ass'n v. Sierra Club*,
 523 U.S. 726 (1998) ........................................ 6, 10

*Ozinga v. HHS*,
 2013 WL 12212731 (N.D. Ill. Aug. 14, 2013) ........................................ 25

*Reiter v. Ill. Nat'l Cas. Co.*,
 213 F.2d 946 (7th Cir. 1954) ........................................ 14

*Reliable Automatic Sprinkler Co. v. CPSC*,
 324 F.3d 726 (D.C. Cir. 2003) ........................................ 16

*Rock Energy Coop. v. Vill. of Rockton*,
 614 F.3d 745 (7th Cir. 2010) ........................................ 10

*Rodeo v. Gillman*,
 787 F.2d 1175 (7th Cir. 1986) ........................................................ 19

*SEC v. Arbitrade Ltd.*,
 668 F. Supp. 3d 1290 (S.D. Fla. 2023) ........................................... 19

*SEC v. Balina*,
 2024 WL 2332965 (W.D. Tex. May 22, 2024) ............................... 19

*SEC v. Blockvest*,
 2019 WL 625163 (S.D. Cal. Feb. 14, 2019) ................................... 19

*SEC v. Citigroup Glob. Markets, Inc.*,
 752 F.3d 285 (2d Cir. 2014) ............................................................ 18

*SEC v. Coinbase, Inc.*,
 726 F. Supp. 3d 260 (S.D.N.Y. 2024) ....................................... 19, 20

*SEC v. Edwards*,
 540 U.S. 389 (2004) ........................................................................ 19

*SEC v. Grybniak*,
 2024 WL 4287222 (E.D.N.Y. Sept. 24, 2024) ............................... 19

*SEC v. Kik Interactive Inc.*,
 492 F. Supp. 3d 169 (S.D.N.Y. 2020) ............................................ 19

*SEC v. LBRY, Inc.*,
 639 F. Supp. 3d 211 (D.N.H. 2022) ................................................ 19

*SEC v. NAC Found., L.L.C.*,
 512 F. Supp. 3d 988 (N.D. Cal. 2021) ............................................ 19

*SEC v. Payward, Inc.*,
 2024 WL 4511499 (N.D. Cal. Aug. 23, 2024) ................................ 19

*SEC v. Ripple Labs, Inc.*,
 682 F. Supp. 3d 308 (S.D.N.Y. 2023) ...................................... 9, 21, 22

*SEC v. Ripple Labs, Inc.*,
 697 F. Supp. 3d 126 (S.D.N.Y. 2023) ......................................... 9, 21

*SEC v. Rivetz Corp.*,
 2024 WL 4892590 (D. Mass. Sept. 30, 2024) ................................ 19

*SEC v. Telegram Grp. Inc.*,
 448 F. Supp. 3d 352 (S.D.N.Y. 2020) ....................................... 19, 20

*SEC v. Terraform Lab'ys Pte. Ltd.*,
 684 F. Supp. 3d 170 (S.D.N.Y. 2023) ....................................... 19, 20

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ................................................................ 19

*SEC v. Wahi*,
    2024 WL 896148 (W.D. Wash. Mar. 1, 2024) .................................. 19

*Schilling v. Rogers,*
    363 U.S. 666 (1960) ................................................................ 14

*Seoul Semiconductor Co. v. Ace Hardware Corp.*,
    2024 WL 2939050 (N.D. Ill. June 11, 2024) .................................. 24

*Smith v. Wis. Dep't of Agric.*,
    23 F.3d 1134 (7th Cir. 1994) .................................................... 5

*Soundboard Ass'n v. FTC*,
    888 F.3d 1261 (D.C. Cir. 2018) ............................................ 16, 17

*Sweeney v. Raoul*,
    990 F.3d 555 (7th Cir. 2021) .................................................... 5

*Sykes v. Cook Inc.*,
    72 F.4th 195 (7th Cir. 2023) .................................................... 4

*Teva Pharms. USA, Inc. v. Sebelius*,
    595 F.3d 1303 (D.C. Cir. 2010) ............................................... 12

*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*,
    435 F.3d 758 (7th Cir. 2006) .................................................... 6

*TRW, Inc. v. Ellipse Corp.*,
    495 F.2d 314 (7th Cir. 1974) ................................................... 24

*Walmart Inc. v. DOJ*,
    21 F.4th 300 (5th Cir. 2021) ................................................. 7, 10

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ............................................................ 22, 24

**Statutes and Rules**

5 U.S.C. § 551 ...................................................................... 16

5 U.S.C. § 701 ...................................................................... 18

5 U.S.C. § 702 .................................................................. 15, 18

5 U.S.C. § 704 .................................................................. 14, 15

28 U.S.C. § 2201 ............................................................... 14, 22

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

Section 3(a)(10), 15 U.S.C. § 78c(a)(10) ...................................................... 19

Section 3(a)(15), 15 U.S.C. § 78c(a)(15) ........................................................ 2

Section 3(a)(55), 15 U.S.C. § 78c(a)(55)(A) ................................................ 18

Section 4(a), 15 U.S.C. § 78d(a) ..................................................................... 2

Section 21(d), 15 U.S.C. § 78u(d)(1) ........................................................... 18

Section 25(a)(1), 15 U.S.C. § 78y(a)(1) ....................................................... 13

Section 25(b)(1), 15 U.S.C. § 78y(b)(1) ....................................................... 13

17 C.F.R. § 202.1(d) ............................................................................ 3, 6, 16

**Other Authorities**

Sec. & Exch. Comm'n, Div. of Enf't, Enforcement Manual (2017) ........................................ 2, 6

## INTRODUCTION

Plaintiff Bitnomial Exchange, LLC improperly asks this Court to issue an advisory opinion before there is any concrete dispute between Bitnomial and defendants the Securities and Exchange Commission and its five Commissioners in their official capacities (collectively, the Commission).  Bitnomial alleges that it operates an exchange for digital assets and that it wishes to list futures in XRP—a particular digital asset.  Allegedly fearing a Commission enforcement action, Bitnomial seeks a declaration that XRP futures are not subject to the federal securities laws.  But Bitnomial does not allege that the Commission has threatened to bring an enforcement action against it or taken any position regarding its plans.  Instead, Bitnomial speculates about a potential future action based on alleged statements by Commission staff—which are not an official expression of the Commission's views—and a different enforcement action against a different entity.  That is too thin a reed on which to demand the intervention of a federal court.

Consequently, Bitnomial's complaint should be dismissed for three independent reasons. First, ripeness and standing principles preclude this Court from exercising jurisdiction to rule on Bitnomial's request that this Court bless Bitnomial's business operations.  Given the absence of any imminent enforcement action, Bitnomial cannot demonstrate any cognizable hardship from deferring resolution of the issues it raises until there is such an action (if there is one).

Second, Bitnomial fails to state a claim upon which relief can be granted.  The complaint does not identify any cause of action authorizing Bitnomial to sue and does not allege that the Commission has taken any final agency action, as would be required to assert an Administrative Procedure Act (APA) claim.  Separately, the complaint contains no factual allegations providing a basis for this Court to declare that XRP futures are categorically beyond the reach of the federal securities laws, particularly given the fact-intensive nature of the relevant inquiry. Instead, the complaint relies on a New York district court decision in the Commission's

1

enforcement action against a different entity—Ripple Labs, Inc., the issuer of XRP—and two of its executives. But the *Ripple* court stressed that its rulings were based on specific evidence and transactions, and it expressly declined to address the issue Bitnomial erroneously claims that court resolved in its favor: whether secondary-market XRP sales between third parties (i.e., investors other than Ripple or its control persons) can constitute offers and sales of securities.

Third, even if Bitnomial could overcome those hurdles, this Court should exercise its discretion to dismiss the complaint. A declaratory judgment is a discretionary remedy, and this Court should decline to interfere with the Commission's discretion to determine whether and when to investigate and enforce potential violations of the securities laws.

Alternatively, the Court should stay this action pending the Second Circuit's resolution of the *Ripple* appeal. *See SEC v. Ripple Labs Inc.*, Nos. 24-2648, -2705 (2d Cir.). Bitnomial's complaint rests primarily on the district court's decision, which the Second Circuit is currently reviewing. Even by the terms of Bitnomial's erroneous, conclusory allegations, resolution of this case should await the Second Circuit's guidance.

## BACKGROUND

The Commission "generally acts through a vote of the majority of its five commissioners." *Nat'l Ctr. for Pub. Pol'y Rsch. v. SEC* (*NCPPR*), No. 23-60230, 2024 WL 4784358, at *5 (5th Cir. Nov. 14, 2024) (citing 15 U.S.C. §§ 78c(a)(15), 78d(a)). The "filing or institution of any enforcement action must be authorized by the Commission." SEC Enforcement Manual 22 (2017), https://www.sec.gov/divisions/ enforce/enforcementmanual.pdf. When Enforcement staff present a recommendation to the Commission after an investigation, the Commission then "consider[s] the recommendation and vote[s] on whether to approve or reject the recommendation" and initiate an enforcement action (or not). *Id.* at 23.

The Commission staff may "offer informal advice on a range of issues to 'members of the public dealing with the Commission.'" *NCPPR*, 2024 WL 4784358, at *1 (quoting 17 C.F.R. § 202.1(d)). But the "opinions expressed by members of the staff do not constitute an official expression of the Commission's views." 17 C.F.R. § 202.1(d).

The complaint does not allege that the Commission has taken any action with respect to Bitnomial, such as initiating an enforcement action. *See* Compl. ¶¶ 32-40; *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (stating that on dismissal motions, the Court accepts factual allegations as true but not legal conclusions). Bitnomial alleges that it "operates an exchange" for certain "digital asset futures and options." Compl. ¶ 2; *see Bd. of Trade of City of Chicago v. SEC*, 187 F.3d 713, 715 (7th Cir. 1999) (describing a futures contract as a "fungible promise to buy or sell a particular commodity at a fixed date in the future"). Bitnomial describes a "digital asset" as "virtual or digital money that takes the form of 'tokens' or 'coins'" and is created using a blockchain, a "type of shared database" where "multiple copies are saved on many machines." Compl. ¶¶ 19-20. The complaint alleges that XRP is a digital asset and that transactions in XRP are recorded on a blockchain called the "XRP Ledger." *Id.* ¶¶ 21-22.

Bitnomial alleges that, on August 9, 2024, it filed a self-certification with the Commodity Futures Trading Commission for trading of XRP futures contracts. *Id.* ¶ 27; *see also KalshiEX LLC v. CFTC*, 119 F.4th 58, 61 (D.C. Cir. 2024) ("Designated Markets can self-certify to the [CFTC] that the contracts comply with the Commodity Exchange Act and the [CFTC's] regulations."). Bitnomial alleges that each XRP futures contract would "enable[] a market participant to buy and sell the obligation to deliver or receive" a certain quantity of XRP "on a specific future date at a specific price." Compl. ¶ 28. The complaint contains no other factual allegations about XRP futures. *See id.* ¶¶ 26-31.

Bitnomial alleges that Commission staff reached out to Bitnomial a few days after it filed its CFTC self-certification regarding XRP futures. *Id.* ¶ 32. According to Bitnomial, the Commission staff "informed Bitnomial that it believes that the proposed XRP Futures contract is a security futures contract that is subject to the federal securities laws" because "the underlying digital asset, XRP, is an 'investment contract' and, therefore, a security under the Securities Act and the Exchange Act." *Id.* ¶ 33. The Commission staff thus allegedly "asserted that Bitnomial is required to register as a national securities exchange with the SEC prior to listing XRP Futures." *Id.* Bitnomial further alleges that the Commission staff "sent to Bitnomial three summary judgment briefs from *SEC v. Ripple Labs, Inc.*," a case in the Southern District of New York, in which the Commission asserted that Ripple violated "the Securities Act when [it] offered and sold XRP to the public as an unregistered security." *Id.* ¶¶ 34-35.

On October 10, 2024, Bitnomial brought this action against the Commission and its Commissioners in their official capacities. Bitnomial seeks a declaration that the "XRP Futures contract is not a security futures contract under the Exchange Act." *Id.* ¶¶ 54-63, Prayer for Relief. Claiming that the Commission is exceeding its statutory authority, Bitnomial also seeks "permanent injunctive relief preventing the SEC from asserting jurisdiction over XRP Futures or pursuing any investigation or enforcement action against Bitnomial relating to listing, trading, purchasing, or selling XRP Futures on Bitnomial's exchange." *Id.* ¶¶ 64-68, Prayer for Relief.

## LEGAL STANDARDS

The Court should dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), the "party invoking federal jurisdiction bears the burden of establishing that it exists." *Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023). "To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

Bitnomial's complaint should be dismissed for three independent reasons: the complaint does not present a justiciable case or controversy under Article III; the complaint fails to state a claim upon which relief can be granted; and, assuming there is jurisdiction and a plausible claim, the Court should decline to exercise its discretion to issue a declaratory judgment. Alternatively, this case should be stayed pending the Second Circuit's resolution of the *Ripple* appeal, as Bitnomial has premised its complaint on the district-court decision being appealed.

**I.    This Court lacks subject-matter jurisdiction because the complaint does not present a justiciable case or controversy.**

Bitnomial has not shown either ripeness or standing, which both originate from Article III, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and are "jurisdictional prerequisites," *Smith v. Wis. Dep't of Agric.*, 23 F.3d 1134, 1142 (7th Cir. 1994). Ripeness and standing are related but distinct: "Whereas ripeness is concerned with *when* an action may be brought, standing focuses on *who* may bring a ripe action." *Indiana Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007) (citation omitted). Because Bitnomial has not shown ripeness and standing, it has not met its burden to adequately plead subject-matter jurisdiction.

**A.    Bitnomial's claims are not ripe.**

Ripeness prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Sweeney v. Raoul*, 990 F.3d 555, 559-60 (7th Cir. 2021) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)). For challenges to

agency action, ripeness also protects "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab'ys*, 387 U.S. at 148-49.  Bitnomial's claims run afoul of both principles.

"Determining whether administrative action is ripe for judicial review requires [a court] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  In applying this standard, the Seventh Circuit has considered (1) whether "judicial intervention would inappropriately interfere with further administrative action," (2) whether "the court would benefit from further factual development of the issues presented," and (3) whether "delayed review of an agency decision could cause hardship to the petitioner." *Texas Indep. Producers & Royalty Owners Ass'n v. EPA*, 435 F.3d 758, 766 (7th Cir. 2006) (citing *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).  Each of these considerations demonstrates that Bitnomial's claims are not ripe.

### 1. Judicial intervention would be unduly disruptive.

Bitnomial's suit is premature because the Commission has taken no action regarding it. Bitnomial identifies staff statements regarding XRP futures and Bitnomial's registration status, Compl. ¶¶ 32-33, but "opinions expressed by members of the staff do not constitute an official expression of the Commission's views."  17 C.F.R. § 202.1(d).  Bitnomial does not allege that *the Commission* has taken any action, such as deciding, by a majority vote of its Commissioners, to bring an enforcement action against Bitnomial.  Compl. ¶¶ 8, 62; *see* Enforcement Manual, *supra*, at 22-23.  And "the Commission may have different views than its staff and choose to pursue a different course of action altogether."  *NCPPR*, 2024 WL 4784358, at *2; *see Bd. of Trade of City of Chicago v. SEC*, 883 F.2d 525, 530 (7th Cir. 1989) (similar).  Moreover, and even with regard to staff, Bitnomial does not allege that any Commission staff have conducted an

investigation, let alone recommended action that the Commission has chosen to undertake. *See* Compl. ¶¶ 32-35. Accordingly, Bitnomial's allegations fall short of demonstrating a ripe dispute between it and the Commission.[1]

Nor do the Commission's filings in *Ripple* establish an active dispute. Contrary to Bitnomial's suggestion, *see id.* ¶¶ 34-40 & n.3, 57, in *Ripple*, the issue before the district court was "whether *Defendants*" (Ripple and two of its executives) "offered and sold XRP as securities." Pl.'s Mem. in Supp. of Mot. for Summ. J. at 1, *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832 (S.D.N.Y. Sept. 13, 2022), ECF No. 837 (emphasis added). The issue was not whether "secondary market" transactions in XRP between other investors—and not Ripple or its control persons—are offers and sales of securities, *see* Compl. ¶ 57. Notably, the Commission in *Ripple* stressed that its claims there did not include "XRP transactions between two public investors not involving Ripple's affiliates, dealers, or underwriters." Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J., *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832 (S.D.N.Y. Oct. 18, 2022), ECF No. 841.

Bitnomial's allegations thus do not show that the Commission has "provided its final word on the matter '[s]hort of an enforcement action,'" or that the staff, let alone the Commission, have contemplated or taken any steps towards an enforcement action. *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 437 (D.C. Cir. 1986) (citation omitted). Judicial review now would "improperly intrude[] into the agency's decisionmaking process" and "squander[] judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind." *Id.* at 436; *see also Bd. of Trade of City of Chicago v. CFTC*, 704 F.2d 929,

---

[1] Even if Enforcement staff had begun investigating Bitnomial or the Commission had brought an enforcement action against Bitnomial, that would not render Bitnomial's suit ripe. *See, e.g.*, *Walmart Inc. v. DOJ*, 21 F.4th 300, 313 (5th Cir. 2021) (declaratory-judgment action not ripe because government's enforcement action against plaintiff "provid[ed] [plaintiff] with an avenue to test its theories" and "reduce[d] the likelihood of future prosecution").

932 (7th Cir. 1983) (suit not ripe if it "runs the risk" of a court "prematurely involving itself in the decision-making process of another branch of government").[2]

> ### 2. The Court would benefit from further factual development of the issues.

This case is also unripe because Bitnomial's abstract claims do not arise in a concrete setting. "Courts customarily deal in specific facts or circumstances drawn with some precision and legal questions trimmed to fit those facts or circumstances; they are not in the business of deciding the general without reference to the specific." *Am. Fed'n of Gov't Emps., AFL-CIO v. O'Connor*, 747 F.2d 748, 755-56 (D.C. Cir. 1984). Thus, a dispute is not ripe when "further factual development would substantially assist in any court's evaluation" of the issues. *Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 619 (7th Cir. 2003). A court that considers a challenge to agency action "without some particular set of facts before it runs the risk of rendering an unnecessary or inadequately informed decision," *Bd. of Trade*, 704 F.2d at 932, even where the issues will ultimately be legal, *Nat'l Park Hosp. Ass'n*, 538 U.S. at 812 (holding that case was not ripe because "further factual development would 'significantly advance [the Court's] ability to deal with the legal issues presented'" even though the "question presented" was "a purely legal one").

Bitnomial's request for a declaration that XRP futures are not subject to the federal securities laws—based solely on the *Ripple* decision—contravenes these principles. *See* Compl. ¶¶ 41-46. As the *Ripple* court emphasized, the determination of whether a given transaction

---

[2] The absence of any final agency action under the APA, *see infra* pp. 15-18, further underscores the lack of ripeness. *See Nat'l Park Hosp. Ass'n*, 538 U.S. at 812 (considering existence of final agency action in assessing ripeness); *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016) ("[A] challenge to agency conduct is ripe only if it is filed after the final agency action."). But Bitnomial's claims would not be ripe even if the complaint had alleged final agency action. *See Home Builders Ass'n*, 335 F.3d at 619 (holding that plaintiff's suit was unripe even "on the assumption that [the action] can clear the finality hurdle").

involves a security "depend[s] on the totality of circumstances and the economic reality of that specific contract, transaction, or scheme." *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 329 (S.D.N.Y. 2023). Indeed, the court reached its determination after examining "an extensive . . . factual record and detailed expert reports." *SEC v. Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 132 (S.D.N.Y. 2023) (denying interlocutory review). Here, however, Bitnomial's complaint alleges few, if any, specific facts about the instrument it supposedly seeks to list. *See* Compl. ¶¶ 26-31. Deferring consideration of Bitnomial's claims until there is a concrete setting—*e.g.*, the Commission has conducted an investigation (which may never occur) and brought an enforcement action (which also may never occur)—with specific factual allegations about Bitnomial's conduct would crystallize the relevant facts and circumstances. By contrast, Bitnomial's complaint improperly asks this Court to "adjudicate[e] whether federal law would allow an enforcement action" when that requires "determin[ing] the legality of . . . hypothetical situations," particularly with respect to "a fuzzily defined range of enforcement actions that do not appear imminent." *Google, Inc. v. Hood*, 822 F.3d 212, 227 (5th Cir. 2016); *see also Bd. of Trade*, 704 F.2d at 934 (challenge to agency action not ripe because "a court is in a much better position to decide whether the Commission acted arbitrarily when all of the facts surrounding a specific instance of enforcement by the Commission are before it").

### 3. There is no cognizable hardship to Bitnomial from withholding judicial review now.

Bitnomial will suffer no cognizable hardship if this Court declines to provide an advisory opinion. Even where issues are fit for review, a challenge is ripe only if the agency action "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Abbott Lab'ys*, 387 U.S. at 153. But Bitnomial does not challenge any final agency action that demands immediate compliance. Instead, its

claims are based on informal staff statements and judicial filings in separate case that is currently pending appeal. Compl. ¶¶ 32-40, 56-57. Those events do not "create 'adverse effects of a strictly legal kind" for Bitnomial, which are "required for a showing of hardship." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 809-10. They "do not command anyone to do anything or to refrain from doing anything; they do not grant, withhold, or modify any formal legal license, power, or authority; they do not subject anyone to any civil or criminal liability; they create no legal rights or obligations." *Ohio Forestry Ass'n*, 523 U.S. at 733. Absent any "administrative directive to which" Bitnomial "must comply" or "any sanctions for noncompliance," Bitnomial's "claims of uncertainty in [its] business . . . are not sufficient to warrant [a court's] review of an ongoing administrative process." *Bethlehem Steel Corp. v. EPA*, 536 F.2d 156, 163 (7th Cir. 1976).

Moreover, there is no hardship because Bitnomial can raise arguments it may have about the securities laws if the Commission ever initiates an enforcement action. *See, e.g.*, *Rock Energy Coop. v. Vill. of Rockton*, 614 F.3d 745, 749 (7th Cir. 2010) (pre-enforcement challenge not ripe because "[i]f and when [defendant] ever initiates" proceedings against plaintiff's property, plaintiff "will be able to assert the same defenses that it has put forward here"); *Walmart*, 21 F.4th at 313 (no "cognizable hardship for purposes of ripeness" where plaintiff "has the ability to test the government's regulatory position in court by raising its theories as defenses"). If the Commission ever files a federal complaint against Bitnomial, it could then challenge the Commission's alleged theories, "when harm is more imminent and more certain." *Ohio Forestry Ass'n*, 523 U.S. at 734; *see AT&T Corp. v. FCC*, 349 F.3d 692, 702 (D.C. Cir. 2003) (stating that the mere "burden of participating in . . . judicial proceedings does not constitute sufficient hardship to overcome [an] agency's challenge to ripeness").

Bitnomial suggests that, for ripeness purposes, there is something different about declaratory-judgment actions, and that a court does "not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." Compl. ¶ 62 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007)). Like all other suits, however, "declaratory-judgment actions must satisfy Article III's case-or-controversy requirement." *California v. Texas*, 593 U.S. 659, 672 (2021). Thus, a plaintiff must demonstrate a "genuine threat of enforcement" to bring a declaratory-judgment action, *MedImmune*, 549 U.S. at 129, and Bitnomial has not made such a showing. *See supra* pp. 6-8.

### B. Bitnomial lacks Article III standing.

Similar to its ripeness problems, Bitnomial lacks Article III standing, which often "boil[s] down to the same question" as ripeness in pre-enforcement cases like this one. *MedImmune*, 549 U.S. at 128 n.8. For standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). An injury in fact "must be real and not abstract," and "the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Id.* at 381.

Bitnomial fails to demonstrate that it has suffered an injury in fact traceable to any action by the Commission. Bitnomial alleges that it must choose between not listing XRP futures or facing "potential enforcement from the SEC." Compl. ¶¶ 48, 62. But Bitnomial "cannot manufacture standing merely by inflicting harm on [itself] based on [its] fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). And Bitnomial has not shown that a Commission enforcement action is "certainly impending" because there are no allegations of any investigative or enforcement steps by staff,

11

let alone the Commission.  Compl. ¶¶ 32-33, 48, 62.  Moreover, "the staff's indication of an intent to recommend an enforcement action—or not—is not binding on anyone"; "the Commission may have different views than its staff and choose to pursue a different course of action altogether."  *NCPPR*, 2024 WL 4784358, at *2, *7.  Bitnomial's bare "[a]llegations of possible future injury are not sufficient" to establish Article III standing.  *Clapper*, 568 U.S. at 409 (internal quotation marks omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.").  After all, "merely foreseeable future litigation resulting from a statutory interpretation that an agency has adopted in an adjudication is . . . without more . . . too speculative to satisfy Article III's injury-in-fact requirement."  *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303, 1313 (D.C. Cir. 2010).

Bitnomial also cannot establish any impending injury based on *Ripple*.  *See* Compl. ¶¶ 34-40, 57.  As explained above, *see supra* p. 7, *Ripple* involved different defendants, and the Commission took no position on secondary-market transactions by those defendants involving XRP, Compl. ¶ 57, let alone any position about XRP futures, and it is on appeal.  *Ripple* thus does not show that the Commission will "imminent[ly] appl[y]" any "established interpretation of a statute" against Bitnomial.  *Teva*, 595 F.3d at 1313; *see also, e.g.*, *Hodl Law, PLLC v. SEC*, 2024 WL 3898607, at *2 (9th Cir. Aug. 22, 2024) (plaintiff lacked standing to bring digital-asset-related declaratory judgment claims because Commission "has not taken an official position as to whether" digital asset at issue "is a 'security'").

Nor can Bitnomial establish standing based on its allegation that it "has already invested significant time and resources in complying with applicable CFTC listing requirements."  Compl. ¶ 61.  Those alleged costs are not "fairly traceable to the challenged action":  Bitnomial

identifies no action by the Commission (or its staff) compelling Bitnomial to do anything

regarding the CFTC. *Clapper*, 568 U.S. at 409. In any event, where, as here, a plaintiff "seek[s]

only forward-looking relief," alleged "past injuries" alone do not suffice to establish standing;

the plaintiff must demonstrate "a continued risk of future restriction." *Murthy v. Missouri*, 603

U.S. 43, 59 (2024). Bitnomial has not shown any continued, impending risk of a Commission

enforcement action—as would be required for this Court to exercise jurisdiction over

Bitnomial's claims. *See supra* pp. 6-8.

## II.     The complaint fails to state a claim upon which relief can be granted.

Even if Bitnomial presented a justiciable case or controversy, its complaint should be

dismissed because it does not identify a cognizable cause of action, and Bitnomial has not

alleged a plausible claim that XRP futures cannot be security futures under the Exchange Act.

### A.     The complaint fails to identify a viable a cause of action.

To start, Bitnomial fails to establish that it has a cause of action authorizing this suit. To

bring a federal claim, a plaintiff must demonstrate that it has a "right of action." *McCready v.*

*White*, 417 F.3d 700, 703 (7th Cir. 2005). Bitnomial does not satisfy that basic requirement.

#### 1.     Bitnomial identifies no source of authority providing a cause of action.

Bitnomial's complaint includes cursory references to various statutes, but none authorizes

Bitnomial's claims. Bitnomial asserts that "[t]his action arises under . . . the Securities Exchange

Act of 1934, 15 U.S.C. § 78a, *et seq.*" Compl. ¶ 17. Yet Bitnomial does not identify any

specific provision that provides a right of action based on statements by Commission staff or

litigation filings. Nor could it. The Exchange Act provides that those aggrieved by final

Commission orders and certain Commission rules "may obtain review" by filing a petition for

review in a court of appeals. 15 U.S.C. § 78y(a)(1), (b)(1). But Bitnomial does not purport to be

challenging any "final order" or "rule" of the Commission. *See, e.g.*, *Bd. of Trade*, 883 F.2d at

529-30 (no-action letter from Commission staff not "final order of the Commission" reviewable under Exchange Act).  And Bitnomial sued in district court rather than filing a petition for review in a court of appeals.

Bitnomial also invokes the Declaratory Judgment Act, 28 U.S.C. § 2201.  Compl. ¶¶ 8, 17, 55.  But "the operation of the Declaratory Judgment Act is procedural only."  *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937).  It "granted authority to employ a new remedy in enforcing a cause of action," but did not "create new causes of action."  *Reiter v. Illinois Nat. Cas. Co.*, 213 F.2d 946, 949 (7th Cir. 1954); *see also, e.g.*, *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019) ("Declaratory relief 'presupposes the existence of a judicially remediable right' and thus cannot be pursued without a predicate right of action." (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960))).  Because Bitnomial identifies no predicate right of action authorizing its claims, the Declaratory Judgment Act cannot provide one.

Bitnomial's claim for injunctive relief fares no better.  Bitnomial asserts that "[t]his Court has the inherent power to grant injunctive relief against federal officials who are violating, or planning to violate, federal law."  Compl. ¶ 65 (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015)).  But *Armstrong* stressed that "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations."  575 U.S. at 327; *see id.* at 328-29 (holding that Medicaid Act "implicitly preclude[d]" private suits in equity to enforce certain statutory requirement).  The Exchange Act limits review to final Commission orders or rules, and the other avenue to review of agency actions—the APA—includes numerous limitations on judicial review of administrative action, including the requirement of final agency action.  5 U.S.C. § 704; *see infra* pp. 15-18.  Bitnomial

cannot "circumvent" these statutory limitations on review of agency action by repackaging its claims as ones "invoking [a court's] equitable powers." *Armstrong*, 575 U.S. at 328.

### 2. The APA would not provide a cause of action here.

Bitnomial does not invoke the APA—a potential means to challenge supposed agency action—but even had it done so, Bitnomial could not meet its requirements for review. Section 702 of the APA provides a "cause of action" to persons "'suffering legal wrong because of agency action.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 807 (2024) (quoting 5 U.S.C. § 702). Section 704 further "limits the agency actions that are subject to judicial review" to "'final agency action.'" *Id.* (quoting 5 U.S.C. § 704). An agency action is "final" if (1) it "mark[s] the consummation of the agency's decisionmaking process"—i.e., it is not "of a merely tentative or interlocutory nature"—and (2) it is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted). Section "702's injury requirement and § 704's finality requirement work hand in hand: Each is a 'necessary, but not by itself . . . sufficient, ground for stating a claim under the APA.'" *Corner Post*, 603 U.S. at 808 (citation omitted). Because Bitnomial's complaint fails to identify any agency action that has caused it injury, let alone final agency action, it should be dismissed under Rule 12(b)(6). *See Dhakal v. Sessions*, 895 F.3d 532, 539-41 (7th Cir. 2018) (specifying that dismissal for lack of final agency action is "on the merits rather than jurisdictional").

a. Bitnomial focuses on the staff statements regarding XRP futures' status and the registration requirement for a national securities exchange, Compl. ¶¶ 32-33, but even if statements by Commission staff could constitute agency action, it is well settled that "[a]n agency action is not final if it is only 'the ruling of a subordinate official.'" *Dhakal*, 895 F.3d at 539 (quoting *Franklin*, 505 U.S. at 797). And, again, the Commission's regulations underscore

that staff opinions are not official Commission views.  17 C.F.R. § 202.1; *see NCPPR*, 2024 WL 4784358, at *2 ("[T]he Commission may have different views than its staff and choose to pursue a different course of action altogether.").  Bitnomial cannot plausibly claim that Commission staff's alleged statements to Bitnomial mark the consummation of the *Commission's* decisionmaking process.[3]

Nor do the staff's alleged statements determine any "rights," "obligations," or "legal consequences."  *Bennett*, 520 U.S. at 178.  Even if the Commission were to confirm the staff's alleged position, the Commission does not "inflict[] any injury . . . merely by expressing its view of the law—a view that has force only to the extent the agency can persuade a court to the same conclusion."  *AT&T Co. v. EEOC*, 270 F.3d 973, 976 (D.C. Cir. 2001).  Bitnomial's complaint does not allege that the Commission has brought an enforcement action against Bitnomial.  And even if the Commission did so, any legal consequences would flow from a court decision and judgment, not an agency decision.  At the point where the Commission has filed an enforcement action, "[n]o legal consequences flow from the agency's conduct to date, for there has been no order compelling" a defendant "to do anything."  *Reliable Automatic Sprinkler Co. v. CPSC*, 324 F.3d 726, 732 (D.C. Cir. 2003); *see also Home Builders Ass'n*, 335 F.3d at 619 (challenged agency action was not final because it did not "impose new legal requirements on regulated parties, or alter in any way the legal regime to which [plaintiff's] members are subject").

The allegations here are similar to those in *Soundboard Ass'n v. FTC*, 888 F.3d 1261 (D.C. Cir. 2018), where the D.C. Circuit held that an informal opinion letter from agency staff

---

[3] Indeed, Bitnomial fails to allege any "agency action," which the APA defines to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  Bitnomial does not explain how statements from Commission staff or Commission filings in litigation against unrelated third parties could be, for instance, an agency "order"—the "whole or a part of a final disposition . . . of an agency," *id.* § 551(6)—or an agency "sanction" such as the "imposition of [a] penalty or fine," *id.* § 551(10).

was not final agency action reviewable under the APA.  In that case, FTC staff issued a letter

stating that it was "the FTC staff's opinion that telemarketing technology used by [an

association's] members is subject to the FTC's regulation."  *Id.* at 1262; *see id.* at 1265-66.  The

D.C. Circuit concluded that the letter did not "constitute the consummation of [the agency's]

decisionmaking process" because "the FTC regulations expressly delineate between advice from

the Commission and advice from its staff," and the letter "nowhere present[ed]" staff's opinion

"as the conclusive view of the Commission."  *Id.* at 1268-69.  And although the court declined to

reach the second finality requirement, it observed that the staff letter "fixes no specific, legally

enforceable rights or legal obligations," and "a so-called 'violation' of the [letter] does not

independently trigger any penalties."  *Id.* at 1273.

       b.      Bitnomial cannot show injury or final agency action based on the Commission's

filings in the *Ripple* litigation either.  According to Bitnomial, "the SEC has unequivocally

asserted publicly . . . in the *Ripple* case" that "XRP is a security when traded anonymously on the

secondary market."  Compl. ¶ 57.  But Bitnomial was not a defendant in the *Ripple* lawsuit, and

Bitnomial does not explain how it could have been "injured in fact"—as required under

Section 702 of the APA—by an enforcement action against third parties.  *See Corner Post*, 603

U.S. at 808 (citation omitted).

      Nor are the Commission's *Ripple* filings "one[s] by which rights or obligations have been

determined, or from which legal consequences will flow."  *Bennett*, 520 U.S. at 178 (internal

quotation marks omitted).  The "issuance of the complaint" "[s]erv[es] only to initiate the

proceedings," "is not a definitive ruling or regulation," and "ha[s] no legal force or practical

effect upon [the defendant's] daily business other than the disruptions that accompany any major

litigation."  *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242-43 (1980); *see also Abbs v.*

*Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992) ("'[F]inal agency action' . . . emphatically does not mean the issuance of the administrative complaint, kicking off the administrative proceeding."). The same logic applies to the Commission's subsequent filings in the district-court litigation.

Although Bitnomial appears to surmise that the Commission's position in *Ripple* would effectively commit the Commission to bringing an enforcement action against Bitnomial, *see* Compl. ¶¶ 57-58, Bitnomial ignores the Commission's "discretion" to determine which cases to bring, 15 U.S.C. § 78u(d)(1). *See SEC v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 297 (2d Cir. 2014); 5 U.S.C. § 701(a)(2) (excluding from the APA claims for agency action committed to agency discretion by law). In any event, Bitnomial's speculation is insufficient to establish final agency action. Bitnomial's planned conduct is not at issue in *Ripple*, and *Ripple* does not involve any allegations about secondary-market transactions among third parties other than Ripple and its control persons. *See supra* p. 7. Regardless, an agency does not "inflict[] any injury" that could support finality merely by adopting "a view that has force only to the extent the agency can persuade a court to the same conclusion." *AT&T*, 270 F.3d at 976.

### B. The complaint fails to allege facts demonstrating that the XRP futures Bitnomial allegedly seeks to list cannot be security futures.

The complaint should also be dismissed because Bitnomial fails to allege sufficient facts to support its requested declaration that, as a matter of law, an "XRP Futures contract is not a security futures contract under the Exchange Act." Compl., Prayer for Relief; *see id.* ¶¶ 8, 63.

Bitnomial's complaint offers nothing that would allow the Court to reach any conclusion about the status of XRP futures under controlling precedent. According to Bitnomial, "[w]hether XRP Futures are security futures . . . turns on whether the underlying product, XRP, is a security." Compl. ¶ 43; *see* 15 U.S.C. § 78c(a)(55)(A) (defining "security future" as "a contract of sale for future delivery of a single security" with certain exceptions). The term "security" is

defined broadly to encompass "virtually any instrument that might be sold as an investment," *SEC v. Edwards*, 540 U.S. 389, 393 (2004) (citation omitted), and includes an "investment contract," 15 U.S.C. § 78c(a)(10). The Supreme Court explained in *SEC v. W.J. Howey Co.* that an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." 328 U.S. 293, 298-99 (1946); *see* Compl. ¶¶ 35, 44-45 (acknowledging that *Howey* provides the relevant test). Courts applying *Howey* to determine whether a particular asset or transaction is an investment contract thus "look to whether the scheme involves [1] an investment of money [2] in a common enterprise [3] with profits to come solely from the efforts of others." *Edwards*, 540 U.S. at 393 (internal quotation marks omitted); *see, e.g.*, *Rodeo v. Gillman*, 787 F.2d 1175, 1177 (7th Cir. 1986) (same).

In recent years, courts have applied *Howey* in deciding whether offers and sales of digital assets are investment contracts subject to the federal securities laws.[4] These cases highlight the factual nature of the "investment contract" inquiry. Courts have stressed that applying *Howey* requires an evaluation of the "totality of circumstances" of "the parties' economic arrangement. *Terraform*, 684 F. Supp. 3d at 193 (citation omitted). Courts do not "consider the crypto-asset in isolation," but instead "evaluate whether the crypto-assets and the full set of contracts,

---

[4] *See, e.g.*, *SEC v. Rivetz Corp.*, 2024 WL 4892590, at *6-7 (D. Mass. Sept. 30, 2024); *SEC v. Grybniak*, 2024 WL 4287222, at *6-12 (E.D.N.Y. Sept. 24, 2024); *SEC v. Payward Ventures*, 2024 WL 4511499, at *12-17 (N.D. Cal. Aug. 23, 2024); *SEC v. Balina*, 2024 WL 2332965, at *8-11 (W.D. Tex. May 22, 2024); *SEC v. Coinbase*, 726 F. Supp. 3d 260, 293 (S.D.N.Y. 2024); *SEC v. Wahi*, 2024 WL 896148, at *4-7 (W.D. Wash. Mar. 1, 2024); *SEC v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 193-98 (S.D.N.Y. 2023); *SEC v. Arbitrade Ltd.*, 668 F. Supp. 3d 1290, 1300-02 (S.D. Fla. 2023); *SEC v. LBRY, Inc.*, 639 F. Supp. 3d 211, 216-21 (D.N.H. 2022); *Audet v. Fraser*, 605 F. Supp. 3d 372, 394-97 (D. Conn. 2022); *SEC v. NAC Found., LLC*, 512 F. Supp. 3d 988, 995-97 (N.D. Cal. 2021); *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 177-80 (S.D.N.Y. 2020); *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 367-79 (S.D.N.Y. 2020); *SEC v. Blockvest*, 2019 WL 625163, at *4-9 (S.D. Cal. Feb. 14, 2019).

expectations, and understandings surrounding its sale and distribution . . . amount to an investment contract." *Coinbase*, 726 F. Supp. 3d at 289 (internal quotation marks omitted).

In *Terraform*, for instance, the court concluded that the Commission's specific "factual allegations" stated a claim that particular digital-asset transactions were securities transactions. 684 F. Supp. 3d at 192. For example, the court looked to allegations about "investor meetings," "investor materials," and "social media posts" in which the defendants "said that profits from the continued sale of [certain] coins would be fed back into further development of the Terraform ecosystem, which would, in turn, increase the value of the . . . coins." *Id.* at 197. And the facts bearing on *Howey*'s application may vary depending on whether the defendant is offering or selling crypto assets itself or facilitating crypto asset transactions on the secondary market. *See, e.g.*, *Telegram*, 448 F. Supp. 3d at 372 (considering evidence including defendants' initial purchase agreements in determining whether defendants' offers and sales of crypto assets involved investment contracts); *Coinbase*, 726 F. Supp. 3d at 268, 295 (examining evidence that "issuers continue[d] to publicize their plans to expand and support the token's blockchain long after its initial offering" in determining whether defendant "intermediated transactions in crypto-asset securities on its trading platform" on the secondary market).

Bitnomial's complaint, by contrast, contains no factual allegations—under any of *Howey*'s three prongs—to support its claims that the XRP transactions underlying the XRP futures it allegedly seeks to list are not securities transactions. Instead, Bitnomial relies solely on the district court's decision in *Ripple*, asserting that "*Ripple* was . . . clear that anonymous sales of XRP on the secondary market are not sales of investment contracts." Compl. ¶ 45; *see also, e.g.*, *id.* ¶ 6, 44, 57. But "legal conclusions" do not suffice to state a claim. *McCauley*, 671 F.3d at 616. A plaintiff must "plead[] *factual content* that allows the court to draw the reasonable

inference" that the plaintiff is entitled to relief, which Bitnomial has not done. *Iqbal*, 556 U.S. at 678 (emphasis added). And to the extent Bitnomial's complaint can be read as making factual allegations within its description of *Ripple*'s holdings, those allegations are inadequate as well. For instance, according to Bitnomial, "anonymous sales of XRP on the secondary market . . . lack an investment made with the expectation of profit from the managerial efforts of others under *Howey*." Compl. ¶ 45. But such a "[t]hreadbare recital[]" of an "element[]" of the *Howey* test "do[es] not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Regardless, Bitnomial's reliance on *Ripple* fails on its own terms. The *Ripple* court did not hold that "anonymous sales of XRP on the secondary market" by third parties can never be "sales of investment contracts," as Bitnomial suggests. Compl. ¶ 45. The court's decision was based on "totality of circumstances surrounding the offers and sales" of XRP at issue there— offers and sales by Ripple (XRP's issuer) and its control persons. *Ripple*, 682 F. Supp. 3d at 323; *see id.* at 324-30. As the *Ripple* court later explained, its summary-judgment ruling reflected "a direct application of *Howey* to the unique facts and circumstances of this case" and "did not turn on the fact that" Ripple's sales to public buyers on digital asset exchanges "were 'sold through secondary market transactions to retail investors.'" *Ripple*, 697 F. Supp. 3d at 133, 136 (citation omitted). *Ripple* thus did not purport to hold that anonymous sales of XRP on the secondary market are not investment contracts under all facts and circumstances, regardless of the persons involved in the transaction. And, as noted above, whether offers and sales to public investors by Ripple and its control persons violate the federal securities laws is currently on appeal, and its correctness is under review by the Second Circuit.

Indeed, the *Ripple* court made clear that its decision did not address secondary-market sales by persons other than Ripple and its control persons. The court stated that it was "not

21

address[ing] whether secondary market sales of XRP constitute offers and sales of investment contracts because that question is not properly before the Court." 682 F. Supp. 3d at 329 n.16. It stressed that "[w]hether a secondary market sale constitutes an offer or sale of an investment contract would depend on the totality of circumstances and the economic reality of that specific contract, transaction, or scheme." *Id.* Thus, *Ripple* does not establish that the XRP futures Bitnomial allegedly seeks to list—which it claims would involve "anonymous exchanges of XRP" on a "secondary market," Compl. ¶ 46—cannot be security futures as a matter of law. Because Bitnomial's complaint does not plead "enough facts to state a claim to relief that is plausible on its face," the complaint should be dismissed. *Twombly*, 550 U.S. at 570.

### III. The Court should exercise its discretion to dismiss this lawsuit.

Even if Bitnomial's declaratory-judgment action could overcome the jurisdictional and pleading deficiencies identified above, this Court should exercise its discretion to dismiss the complaint. The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). This text confers "on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019) (quoting *MedImmune*, 549 U.S. at 136). Thus, Congress "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, . . . to dismiss an action seeking a declaratory judgment . . . ." *Id.* In determining whether a declaratory-judgment action should be subject to discretionary dismissal, the Seventh Circuit has considered factors including "whether the judgment would settle the controversy," "whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue," "whether

the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for *res judicata*,'" and "whether there is an alternative remedy that is better or more effective." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) (citation omitted); *see also MedImmune*, 549 U.S. at 136 (explaining that "the usefulness of the declaratory judgment remedy" and "the fitness of the case for resolution" inform whether a declaratory-judgment action should be dismissed).

These factors favor dismissing Bitnomial's complaint and denying declaratory relief. Adjudicating Bitnomial's claims would not settle any controversy or usefully clarify any legal relations because Bitnomial seeks an abstract, premature declaration of its rights before the Commission has completed—or even started—any decisionmaking process that could possibly end in an enforcement action. Bitnomial seeks to force the Commission to take a position on the legality of Bitnomial's planned operations through the defense of district-court litigation, before the Commission has had the opportunity, as it normally would, to assess that position through its investigatory and enforcement processes. It is improper to effectively force the Commission to prematurely assert potential violations by Bitnomial from the position of a defendant in a declaratory-judgment action. *See Agri-Trans Corp. v. Gladders Barge Line, Inc.*, 721 F.2d 1005, 1011 (5th Cir. 1983) ("A declaratory judgment action should not be used to circumvent the usual progression of administrative determination and judicial review.").

It is also clear that Bitnomial is improperly invoking the declaratory remedy for the purpose of "procedural fencing." *NUCOR*, 28 F.3d at 579. Bitnomial all but concedes that it has filed this action to preempt "potential enforcement from the SEC," Compl. ¶ 62—even though it fails to show that any investigation or enforcement action is imminent or even likely, *see supra* pp. 6-8. Courts should not entertain declaratory-judgment actions like Bitnomial's that seek an

23

"advisory opinion to determine the effectiveness of a defense to be introduced in another proceeding." *TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314, 323 (7th Cir. 1974). And, for similar reasons, it would be more appropriate to withhold adjudication now and allow Bitnomial to raise its arguments as defenses if the Commission brings an enforcement action. Determining Bitnomial's rights in the context of concrete factual allegations by the Commission rather than a premature declaratory-judgment action would serve the "considerations of practicality and wise judicial administration" that inform the declaratory-judgment remedy. *Wilton*, 515 U.S. at 288.[5]

## IV. In the alternative, the Court should stay these proceedings pending resolution of the Second Circuit *Ripple* appeal.

For the reasons explained above, this Court should dismiss Bitnomial's complaint for lack of subject-matter jurisdiction or for failure to state a claim. Alternatively, however, this action should be stayed pending the outcome of the appeal of the *Ripple* decision, which is currently pending in the Second Circuit, because of the heavy weight that Bitnomial's complaint places on that litigation.

A district court has "broad discretion to stay proceedings." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "To determine whether a stay is appropriate, courts generally consider" whether the stay will: "unduly prejudice or tactically disadvantage the non-moving party"; "simplify the issues in question and streamline the trial"; and "reduce the burden of litigation on the parties and on the court." *Seoul Semiconductor Co. v. Ace Hardware Corp.*, No. 23-cv-2690, 2024 WL 2939050, at *2 (N.D. Ill. June 11, 2024).

---

[5] It is unclear whether Bitnomial believes that its request for injunctive relief also arises under the Declaratory Judgment Act. *See* Compl. ¶¶ 17, 64-68. But even if it does not, Bitnomial's injunction claim should be dismissed for similar reasons as its declaratory-judgment claim. *See Nat'l Health Fed'n v. Weinberger*, 518 F.2d 711, 712 (7th Cir. 1975) (noting that both "[i]njunctive and declaratory judgment remedies are discretionary").

Each of these factors supports a stay here. As discussed above, *see supra* pp. 20-21, Bitnomial chose to rely solely on the district court's decision in *Ripple* to support its claim for relief, but *Ripple* is on appeal and could be reversed. *See* Compl. ¶ 40. Bitnomial offers no reason why its suit should be decided before the *Ripple* appeal is resolved, and Bitnomial cannot justifiably claim any prejudice from being held to its litigation choices.

For similar reasons, a stay would simplify this case and conserve resources. The Second Circuit's decision in *Ripple* would inform the allegations in Bitnomial's complaint (even though, as stated above, those issues are beside the point here). Indeed, because of the way it pleaded its complaint, Bitnomial's claims may fail entirely depending on the *Ripple* outcome, potentially avoiding the need for this Court to address other deficiencies in Bitnomial's allegations. Courts frequently stay proceedings in similar circumstances, and this Court should do the same if it concludes that Bitnomial survives Rule 12(b). *See, e.g.*, *Dawoudi v. Nationstar Mortg., LLC*, No. 16-cv-2356, 2016 WL 8711604, at *2 (N.D. Ill. Sept. 16, 2016) (granting stay pending outcome of appeals because appellate ruling "will be instructive to the parties . . . in briefing and to the court in making its decisions"); *Ozinga v. HHS*, No. 13-cv-3292, 2013 WL 12212731, at *2 (N.D. Ill. Aug. 14, 2013) (granting stay pending disposition of appeals raising issues that "will be material to, and potentially dispositive of, the issues raised here").

## CONCLUSION

The complaint should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim. Alternatively, the case should be stayed pending resolution of the *Ripple* appeal.

Dated:  January 17, 2025

Respectfully submitted,

/s/ Samuel B. Goldstein

Jeffrey A. Berger
Samuel B. Goldstein (*pro hac vice*)
Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
Phone: (202) 551-5100
bergerje@sec.gov
goldsteinsa@sec.gov

*Counsel for Defendants*

Benjamin J. Hanauer
Securities and Exchange Commission
175 West Jackson Blvd., Suite 1450
Chicago, IL 60604
Phone: (312) 353-7390
Facsimile: (312) 353-7398
hanauerb@sec.gov

*Local Counsel*

## CERTIFICATE OF SERVICE

I certify that on January 17, 2025, I provided service of the foregoing document to

Plaintiff's counsel of record via ECF delivery.

/s/ Samuel B. Goldstein